JOHN H. FRESCHEN and GEORGE PUTCHER, Plaintiffs, *v.* WESTERN UNION TELEGRAPH COMPANY, Defendant.

(City Court of the City of New York, April, 1921.)

Telegraphs and telephones — telegraph company cannot relieve itself from the consequences of its wilful misconduct or gross negligence — liability for non-delivery of message — measure of damages.

A telegraph company is responsible for its neglect to perform its duties to one to whom a telegram is addressed as well as to the sender, and a stipulated limitation of liability binds both. (P. 292.)

While a telegraph company is liable for any neglect to exercise due care in the correct and prompt transmission of mes-

sages, it may by contract limit its liability for mistakes or delay in the transmission of messages, but the general rule, irrespective of such a contract, is, that the company cannot in such manner relieve itself from the consequences of its wilful misconduct or gross negligence.   (P. 293.)

Where a telegraph company never sent a cable message delivered to it for transmission, and the failure to deliver is not shown to have been due to mistake in transcribing or difficulty is transmitting, the company is guilty of gross negligence and is not relieved by limited liability stipulations nor does a stipulation relating to the time for presentation of notice of claim, exempt it from liability.   (P. 296.)

In an action for damages for failure to transmit a cable message, brought by the addressee, it appears that a few days after the sender of the message had cabled from South America to plaintiffs in New York city an inquiry as to the price of brass tubes of a specified length and width, he sent to plaintiffs the cable forming the basis of the present suit, from which it plainly appears that the length and width of the tubes ordered were different from those contained in plaintiffs' offer. *Held,* that while the message could not be held to be an unqualified acceptance of plaintiffs' offer, it was at least a definite offer by the sender to plaintiffs contingent upon their acceptance, and that the addressee was entitled to show whether he would have accepted the offer, and that upon such testimony it became a question of fact whether he would have accepted it or not. (Pp. 297, 298.)

This question of fact having been resolved in favor of plaintiffs they were entitled to judgment for the difference between the market price and the contract price.   (P. 298.)

ACTION for damages for failing to transmit a cable message.

Ringrose & Mann (Hyacinthe Ringrose, of counsel), for plaintiffs.

Francis Raymond Stark (Joseph L. Egan, of counsel), for defendant.

CALLAHAN, J.  Plaintiffs bring this action against defendant to recover damages sustained by reason of the alleged negligence of defendant in failing to trans-

mit a cable message. The conceded facts are that plaintiffs are copartners doing business under the firm name of Metal Products Company; that prior to August, 1917, their place of business was in Newark, N. J.; that on or about August first of that year they moved to No. 32 Broadway, New York city, and notified the manager of defendant at Newark to this effect on or about August ninth, requesting him to thereafter forward all telegrams and cables addressed to them at Newark to their New York address. The defendant's manager acknowledged receipt of this letter on August ninth, and promised to do as requested. The defendant is a domestic corporation engaged in the telegraph business. In July, 1917, plaintiffs communicated with one Lehky at Tucuman, Argentina, calling his attention to some boiler tubes which they had on hand and desired to sell. On September twenty-fifth said Lehky cabled to plaintiffs at Newark as follows: " Telegraph price shortest delivery thousand brass tubes fifty millimeter outside diameter gauge thirteen length four feet six inches each." The plaintiffs replied to this message as follows: " We are selling brass tubes forty-three cents per pound December shipment." On September 30, 1917, said Lehky deposited with the Central and South American Telegraph Company at Buenos Aires, Argentina, a message addressed to plaintiffs at Newark, reading: "Accept offer thousand brass tubes fifty millimeter outside diameter thirteen gauge length five feet two inches each price forty-three cents per pound FAS New York December shipment. Telegraph terms." The defendant received this message, and it was accepted by it, written on its filing form 1206, on the back of which was contained, among others, the following: " The company shall not be liable for mistakes or delay in the transmission or delivery, or for non-

delivery of any unrepeated telegram, beyond the amount received for sending the same.'' The message in question was an unrepeated message, and all the company received for its obligation to transmit the same was the sum of fifty-four cents, which was its ordinary and reasonable charge for the transmission of such message without repetition. The message was never delivered. The blank of defendant also contained the following clause: '' In any event the company shall not be liable for damages for any mistake or delay in the transmission or delivery or for the non-delivery of this telegram, whether caused by the negligence of its officers or otherwise, beyond the sum of $50, at which amount this telegram is hereby valued * * *.'' Another clause in the blank was to the effect that the company '' will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the telegram is filed with the company for transmission.'' The plaintiffs testified that they did not have the brass tubes in question on hand, but that they could have purchased same on the date of the message and for some months thereafter at the sum of thirty-four and a fraction cents per pound, which sum was the market price at that time and for some time thereafter. The plaintiff, being the addressee and not the sender of the message in question, may still maintain this action. It is settled law that a telegraph company is responsible for its neglect to perform its duty to the person to whom the message is addressed as well as to the sender (*Halsted* v. *Postal Telegraph Cable Co.*, 193 N. Y. 293), and if there be a stipulated limitation of liability binding on the sender, the addressee is likewise bound thereby to the same extent as the sender. The defendant is a common carrier of messages, and in this respect bears the same relation to commerce as does a

common carrier of goods. It must receive and transmit messages for every one on equal terms, and is bound to exercise care and diligence in the performance of these duties. By reason of the many difficulties attendant upon the transaction of its business as a telegraph company and the possibilities of mistake and delay, even with the exercise of care, a telegraph company is not subject to the strict rule of accountability applied to common carriers of goods. While it does not become an insurer of the correct and prompt transmission of messages, it is liable for any neglect on its part to discharge the duties incident to its business with due care and reasonable diligence. The peculiar risks and hazards attending the performance by telegraph companies of their functions entitle them to protect themselves against such risks and hazards of operation by limiting their liability by contract for mistakes or delay in the transmission of messages. But, irrespective of such contract, it is the general rule that a telegraph company cannot in such manner relieve itself from the consequences of its willful misconduct or gross negligence. *Dixon* v. *Western Union Tel. Co.,* 3 App. Div. 60; *Mowry* v. *Western Union Tel. Co.,* 51 Hun, 126; *Breese* v. *United States Tel. Co.,* 48 N. Y. 132, 141. In this case it is not shown that the message delivered by the sender to the original carrier was received subject to any special limitation as to liability. The sole proof is the concession that at the time the defendant accepted the message from the original carrier the same was written on a certain form of the defendant, on the back of which are contained, among others, the stipulations limiting liability above enumerated. Neither the sender nor the addressee is shown to have entered into such stipulation with the original carrier or with defendant, or to have had any notice thereof. Consequently they cannot be bound thereby.

Even if the original carrier, as a condition for securing the transmission and delivery of the message by defendant to plaintiff, would have been permitted to make such stipulation in the sender's behalf, and by which he would be bound on the theory of agency, there is nothing to show that the original carrier actually entered into said contract of liability limitation or that it had any notice thereof. The fact that the message was written on defendant's blank, without showing the circumstances or by whom, is not sufficient to charge plaintiff with its contents. For aught that appears the defendant itself may have accepted the message and written same on its own blank. The defendant therefore cannot avail itself of the benefit of such limitations. In such case there is no necessity for drawing any distinction between ordinary and gross negligence, for plaintiff makes out a *prima facie* case of negligence by proving the contract to deliver and its breach. *Rittenhouse* v. *Ind. Line of Tel.,* 1 Daly, 474; 44 N. Y. 263; *Baldwin* v. *United States Tel. Co.,* 45 id. 744; *Pearsall* v. *Western Union Tel. Co.,* 124 id. 256. As no explanation has been offered by defendant to show the exercise of due care on its part, the plaintiff is entitled to such damages as the proof shows it has sustained. Even assuming that the conceded facts permit a finding that the message was received by the defendant subject to the limitations contained in its blank, and that the plaintiffs can be charged with notice thereof, I am of opinion that its failure to deliver the message was an act of gross negligence, and therefore it cannot claim the benefit of such limitations. An absolute failure to deliver a message, the receipt of which was duly acknowledged at the place from which it was to be delivered, does not come within the category of the peculiar risks and hazards attend-

ant upon the accurate performance of its duty by a telegraph company, and hence is not such a breach of duty as to render it chargeable only with a lack of ordinary care. This is particularly so where, as here, there is offered no explanation for the failure to perform such duty. It is not a case of an inadvertent or mistaken act of the receiving operator in incorrectly transmitting the message or a delay due to atmospheric or other conditions to which the transmission of telegraphic messages is subject and which are not common to general business. The condition that the company shall not be liable beyond the amount of toll paid in case of mistakes or delays of unrepeated messages or for non-delivery is to be construed as referring only to such mistakes, delays or failures to deliver as might reasonably be supposed to be guarded against by repeating. It does not apply to the case of a failure to deliver a message which, though not repeated, was correctly and without delay transmitted to the office from which it was to be delivered. Sherm. & Redf. Neg. (6th ed.) § 555, and cases cited. It has been held that the failure of a telegraph company to transmit a telegram which had been delivered to one of its agents constituted gross negligence as matter of law. *Pierce* v. *Western Union Tel. Co.,* 177 N. Y. Supp. 598. So also has it been held that a failure to send a message at all or for some days after its delivery to the company for transmission is gross negligence for which the company is liable irrespective of a condition limiting liability in connection with the unrepeated messages. *Mowry* v. *Western Union Tel. Co.,* 51 Hun, 126. See also *Dixon* v. *Western Union Tel. Co.,* 3 App. Div. 60. *Kiley* v. *Western Union Tel. Co.,* 109 N. Y. 231, is not in conflict with these views. In that case it appeared that the message was delivered by plaintiff to defendant's office at Olean, N. Y., for transmission to his

brokers in Bradford, Penn. That the operator could not send the same by direct wire to Bradford, but undertook to send it by way of Buffalo, and so informed plaintiff. The message never reached its destination, but the court says that it may be inferred that it did reach Buffalo, the reason for its not reach-ing Bradford being unexplained. The court held that the failure to deliver was not shown to be willful mis-conduct or gross negligence, but took occasion to state (p. 236) : " It is not the case of a message delivered to the operator and not sent by him from his office." From all that appears here the defendant never sent the message received by it from its office. Its failure to deliver is not shown to be due to mistake in tran-scribing or difficulty in transmitting. All that appears is an absolute failure to perform its duty, unaccom-panied by any explanation whatever of the cause of such failure. This, in my opinion, is gross negligence for the consequences of which defendant is not relieved by the limited liability stipulations. Nor does the stipu-lation relating to the time for presentation of notice of claim exempt defendant from liability from gross negligence. *Pierce* v. *Western Union Tel. Co.,* 177 N. Y. Supp. 598; *Richardson* v. *N. Y. Central R. R. Co.,* 122 App. Div. 120; *Isham* v. *Erie R. R. Co.,* 112 id. 612. A similar stipulation, designed to give immunity to a common carrier for the accountability which the law imposes on it, has been held not to bar a recovery for the non-delivery of goods, though the limitation period had elapsed before the action had been commenced. *Porter* v. *Southern Express Co.,* 16 Am. Rep. 762. Even assuming that the message in suit was inter-state, though in fact there is no proof that defendant ever forwarded the same from New York, where it was received, to New Jersey, the place where it was addressed, the federal statute (U. S. Stat. at Large,

chaps. 309, 544; 8 Comp. Stat. 1916, p. 9053) has not altered the situation. Such statute places telegraph companies, so far as interstate commerce is concerned, under the direct supervision of the interstate commerce commission and has permitted such companies to make rules and regulations for the conduct of their business which shall be deemed reasonable until changed by such commission. It has accordingly been held that a state law making null and void any stipulation required by a telegraph company as a condition precedent to establishing any claim or liability, is without effect to bind the company on the ground that the act of Congress has ousted the state of jurisdiction over the subject. *Gardner* v. *Western Union Tel. Co.*, 231 Fed. Repr. 405. But the federal statute neither changes the common-law rule of liability nor does it prevent a suitor from pursuing such common-law remedy in the state courts. It appears that the sender of the message over which this suit arises had previously cabled from South America to plaintiffs inquiring as to the price of brass tubes fifty millimeter outside diameter, gauge thirteen, length four feet six inches each, to which plaintiffs replied: "We are selling brass tubes 43 cents per pound December shipment." A few days thereafter the cable forming the basis of this suit was dispatched by the sender to plaintiffs, and reads as follows: "Accept offer thousand brass tubes 50 millimeter outside diameter, 13 gauge, length 5 feet 2 inches each, price 43 cents per pound, FAS New York, December shipment; telegraph terms." Notwithstanding the opening words "accept offer," it plainly appears that the length and width of the tubes so ordered is different than contained in plaintiff's offer, and therefore the message cannot be held to be an unqualified acceptance of plaintiff's offer. On the other hand, it is not

County Court, Erie County, April, 1921.   [Vol. 115.

a mere step in the negotiations, but at least a definite offer by the sender to the plaintiffs contingent upon their acceptance. In such case it has been held that the addressee may show whether he would have accepted the offer and that upon such testimony it becomes a question of fact whether or not he would have so accepted. *Pfeister* v. *Western Union Tel. Co.,* 118 N. E. Repr. 407. This is here found as a fact. The measure of damages is the difference between the market price, which I find was 35 cents per pound, and the contract price, which difference amounts to $865.28, for which sum plaintiffs are entitled to judgment. Verdict directed for plaintiffs in the sum of $865.28.

Judgment for plaintiffs.