OPINION OF THE COURT
David B. Saxe, J.
If Consolidated (Con) Edison’s actions in this case were held not to constitute gross negligence, I doubt if any consumer could ever successfully sue this utility company for damages sustained as a result of a wrongful power turnoff.
*627 The essential facts are these: claimant Veals, a quiet but feisty professor of gerontology at Columbia University, lives on Empire Boulevard in Brooklyn.
His trouble with Con Edison began uneventfully in September of 1981 when he sent Con Edison $60 by check in payment of a bill. The check was enclosed and mailed by him in a familiar Con Edison envelope addressed to a post office box. It was apparently never credited to his account, although it was indorsed by the bank to which it was delivered from a postal lock box. The indorsement evidences its receipt by the bank, and therefore by Con Edison.
Although Veals’ payment of $60 was received by Con Edison, it apparently never was credited to his account, and therefore Con Edison began to send him notices indicating an open balance. Veals responded by advising Con Edison that he had indeed paid the $60. Having been informed that Con Edison wanted a copy (front and back) of the check, Professor Veals proposed the following deal to Con Edison: that Con Edison pay the cost of duplicating and mailing a copy of the check to their office (approximately $1.25); or, that Con Edison send a representative to Veals’ office to examine the check; or, that Con Edison agree to pay Veals his lost wages if he visited Con Edison’s office with the check. Veals concluded his offer with the proviso that he would bear all the expenses if he was in error. Con Edison’s response was to send him further reminders that he had an outstanding balance. In December, 1981, Veals again sent a letter to Con Edison specifying his payments, from June through December of that year and concluded that he had a zero balance. Again, he repeated his offer to Con Edison. On December 21, 1981, Veals received a “turnoff of service notice” based upon his alleged nonpayment of $60. On January 5, 1982 Con Edison sent a memo to Veals which admitted that he had sent the disputed payment to them but again requested copies of the front and the back of the check. They wrote: “If it is determined that we did not credit you due to an error on our part, you can submit a claim for the cost of the photostat to our Claims Department.”
*628 On January 5, 1982, the very same day that the communication from Con Edison was made admitting payment, Con Edison shut off Professor Veals’ electricity. He was apparently out of town when the turnoff occurred and when he returned on January 6, his apartment was dark and, as he testified, he “saw water running out of my refrigerator.”
Thereafter, to add to the confusion, Con Edison wrote to him on January 7, 1982 stating that a credit extension would be granted until January 21, 1982 but that service would be discontinued unless payment was made. On January 8, 1982 Con Edison wrote to Veals advising him that they had discontinued his service for nonpayment and acknowledged that his previous bill had been based on an inaccurate meter reading.
Is Con Edison liable? The courts of this State have uniformly upheld rate schedule provisions which include a provision relieving a utility from liability for interruption of service due to causes other than for gross or willful negligence. (Hamilton Employment Serv. v New York Tel. Co., 253 NY 468; Newman v Consolidated Edison Co., 79 Misc 2d 153; Long v Long Is. Light. Co., NYLJ, March 14, 1979, p 14, col 6.) Con Edison supplies electricity to its customers under the terms and conditions specified in such a rate schedule, which has the force and effect of law. (See Lee v Consolidated Edison Co. of N. Y., 98 Misc 2d 304.) Therefore, Con Edison may not be held liable in this case unless its actions constitute gross negligence or willful misconduct.
Did the actions of Con Edison in this case constitute gross negligence? “Gross negligence” means that the defendant is so extremely careless that it is equivalent to recklessness, while prdinary negligence is the doing of some act which a reasonably prudent person would not do under the circumstances or a failure to use ordinary and reasonable care under the circumstances. (Hong Kong Export Credit Ins. Corp. v Dun & Bradstreet, 414 F Supp 153.) Gross negligence involves the thoughtless disregard of consequences without any attempt to avoid them. (Matter of Masten, 276 App Div 252, affd 301 NY 505; cf. Denmark *629 v New York Tel. Co., 97 Misc 2d 205, revd 103 Misc 2d 1055.)
Here, after listening to the testimony of Professor Veals and having examined the documentary evidence, I find that Con Edison’s actions went far beyond mere negligence or carelessness. I find that the actions of Con Edison fit the test applicable for a finding of gross negligence. The striking fact here is that Con Edison admitted that the customer had paid his bill but proceeded to sever his utility service anyway despite this knowledge.
In Long v Long Is. Light. Co. (LILCO) (supra), the court held that the utility company would not be chargeable with gross negligence and thus would not be held liable for damages resulting from its turnoff of electricity to the plaintiff’s premises as the result of LILCO’s misinterpretation of a note written to it by the plaintiff customer. Here, the actions of Con Edison were not due to any misinterpretation of a communication. Rather, the power “cutoff” came about despite the fact that Con Edison had acknowledged that Veals had paid for his service in full. This type of error exceeds the simple negligence founded on a misreading of a customer’s instruction contained in a note. It is simply put, irresponsible behavior.
Con Edison advances two contentions in its defense. First, it is stated that the “turnoff”, even with knowledge of the payment of the disputed bill, is not sufficient to establish gross negligence, but, at most, is the result of inept or inefficient management. I reject this argument. The consequence to a consumer of having electrical power shut off is great. (See, generally, Consolidated Edison Co. v Jones, 111 Misc 2d 1, 5.) The utility is chargeable with knowing the severe consequences of such action. Further, Professor Veals could not have purchased his electricity elsewhere. He had no choice but to deal with Con Edison. The fact that they proceeded with a “turnoff” after admitting payment of the disputed item is proof of a reckless indifference to the welfare and safety of their customer, Professor Veals. That to me is gross negligence. (See Matter of Jenson v Fletcher, 277 App Div 454.)
Con Edison further contends that if negligence, gross or otherwise, is found, it is attributable to the acts of the *630 bank which obtained Veals’ check from the postal lock box and failed to credit the payment to his Con Edison account. Even if the negligence was caused by the action or inaction of the bank, I hold that Con Edison is liable to its customer for the acts of the bank. Con Edison’s theory that the bank was an independent contractor as opposed to an agent misses the point. Consumers, such as Professor Veals, had no knowledge that Con Edison delegated its check collection functions to a third party. They thought that they were dealing with Con Edison. Con Edison set up the collection system for its own benefit. To permit them to defend by attempting to prove an independent contractor relationship with the bank would be unfair to Professor Veals. Under these circumstances, Con Edison is estopped to deny that the actions of the bank were attributable to it. (21 NY Jur, Estoppel, § 30 et seq.)
Professor Veals seeks actual damages representing food loss ($124.80), loss of pay for missing a day’s work ($112), loss of a consulting fee ($300) on account of his inability to use his apartment for a meeting, payment of a “turn-on” fee ($10), payment of a duplicate $60 charge, and, of course, a xerox charge ($6). In particular Veals claims he lost eight pounds of crabmeat which he originally purchased at $4 a pound. He claims that its replacement value is now $25 per pound. So too, with the 16 shell steaks that he purchased for $1.69 a pound and which now sell for $2.30 a pound. It is the general rule in measuring damages that a court should consider the value of the item lost or destroyed. (Dobbs, Remedies, § 3.2.) With respect to destroyed or damaged food, properly refrigerated at the time of the power turnoff, its value to a consumer would be the cost of replacement of those food items. (Ibid.) Therefore, Veals is entitled to $70 to compensate him for replacing the crabmeat (a fair price by his calculations) that had been destroyed and $39.80 for the shell steaks. Additionally, he may recover $15 for miscellaneous food loss.
Additionally, I award Veals $112 for a loss of a day’s work. He was, by his own account, unable to work the next day because his time was taken up in convincing Con Edison to rectify its error. Veals is also entitled to recover *631 $200 representing compensation for the inconvenience suffered and anxiety resulting from the unnecessary power “turnoff”, plus the duplicate payment made by him of $60, $10 for a “turn-on” fee and $6 for xeroxing various items in preparation for this hearing.
However, his claim of loss of a $300 consulting fee is too speculative to be a proper item of damages. (Dobbs, Remedies, § 3.3.) Veals claims that due to the blackout in his apartment, it was unusable for a meeting. As a result, he claims that he lost a consulting fee. This claim was not adequately proven and, in any event, the meeting could easily have been held elsewhere. His compensatory damages amount to $512.80.
In addition, it is claimed that Con Edison’s actions here warrant a further award — one of punitive damages. Punitive damages are intended to punish the tort-feasor for his conduct and to deter him and others like him from similar action in the future. (Prosser, Law of Torts [4th ed], § 2, pp 9-10.) They may only be awarded for exceptional misconduct which transgresses mere negligence, as when the wrongdoer has acted “maliciously, wantonly, or with a recklessness that betokens an important motive or vindictiveness” (9 Encyc NY Law, Damages, § 63, p 51), or has engaged in “outrageous or * * * intentional misconduct”, or with “reckless or wanton disregard of safety or rights.” (Morris, Punitive Damages in Personal Injury Cases, 21 Ohio St LJ 216; Sharapata v Town of Islip, 56 NY2d 332.) On the basis that Con Edison turned off Professor Veals’ electric power with knowledge that payment of the disputed charge had been made, I have found such action to be properly classified as gross or exceptional misconduct, sufficient to form the basis for an award of compensatory damages. I nevertheless hold that punitive damages may not be awarded. If the act or conduct of Con Edison was part of a systematic business practice which the corporation had adopted (see 14 NY Jur, Damages, § 186) in furtherance of its business purpose, then, the corporation would be liable for punitive as well as compensatory damages. That is simply not the case here. Although I have found that Con Edison is chargeable with gross negligence, I have however determined on the basis of the testimony at *632 trial, that the incident that occurred to Professor Veals is not part of an over-all policy of the utility company.
Accordingly, the clerk shall enter a judgment for Professor Veals in the sum of $512.80.